IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| BATH AUTHORITY, LLC<br>d/b/a DREAMLINE,<br><br>　　　　Plaintiff,<br><br> v.<br><br>ASTON GLOBAL, INC.,<br><br>　　　　Defendant. | Case No. 3:19-cv-00762-K |

**FINDINGS, CONCLUSIONS, AND RECOMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

　　This is an intellectual property dispute between competing sellers of shower doors in which Plaintiff Bath Authority, LLC d/b/a DreamLine ("DreamLine") brings several causes of action against Defendant Aston Global, Inc. ("Aston") alleging Aston's sale of certain French-door style shower doors infringes DreamLine's design patents and constitutes unfair competition. Pending before the Court is DreamLine's Motion for Preliminary Injunction and Expedited Discovery (ECF No. 13). Because DreamLine has not established a substantial threat of irreparable harm if an injunction is not granted, the Motion should be DENIED.

**Background**

　　DreamLine markets and sells bathtub and shower doors and enclosures using a French branding theme. Am. Compl. 5, ¶ 20 (ECF No. 18). Most of the

1

products in this "FRENCH line" are branded with the name of a river or town in France and the word "French." *Id.* Among other products, DreamLine's FRENCH line includes: (1) the "French Linea Toulon;" (2) the "French Linea Avignon;" (3) the "French Linea Rhone;" (4) the "French Corner;" and (5) the "Unidoor Toulon." *See id.* at 6, ¶ 25. DreamLine alleges the products in its FRENCH line have been subject to common law trademark protection since "at least March 2016" when they were introduced in the market. *Id.* at 10, ¶ 45. In February 2017, DreamLine obtained registration of the mark "French Corner" for bathtub enclosures, shower doors, and shower enclosures; and in December 2018, it obtained registration of the marks "Avignon" and "Toulon" for the same class of products. *Id.* at 5, ¶ 20; Pl.'s Ex. 1-6 (ECF No. 18-1). DreamLine refers to its general trademark protection earned by selling its French-themed shower doors as well as its registered trademarks collectively as its "FRENCH marks." *See* Am. Compl. 5, ¶ 20.

DreamLine also owns two relevant design patents: D816,818 entitled "Shower Door and Panel" ("D818") and D816,814 entitled "Glass Shower Panel of Shower Enclosure" ("D814"). *Id.* at 7-9, ¶¶ 34-39; Pl.'s Ex. 63-73. D818 claims "[t]he ornamental design for a shower door and panel, as shown and described." Pl.'s Ex. 63. It is depicted as double doors with 24 equally sized glass panes on each door—four columns and six rows each. *See id.* The left-hand door has a pull handle positioned near where the two doors meet. *See id.* The Unidoor Toulon product is a black-framed shower door, identical to the D818 drawings. Am. Compl. 13, ¶ 53; Pl.'s Ex. 63. The French Linea Toulon product is a single door identical to Unidoor

Toulon's right-hand door. Am. Compl. 12, ¶ 50; Pl.'s Ex. 63. D814 also claims "[t]he ornamental design for a shower door and panel, as shown and described." *Id.* at 70. It, however, is depicted as a single door with 12 equally sized glass panes—three columns and four rows. *See id.* It does not have a handle. *See id.*

Figure 1: DreamLine's Patents – Drawings



Pl.'s Ex. 63, 70.

Figure 2: DreamLine's Products



Am. Compl. 11, 13, ¶¶ 45, 53. [1]

Aston sells four products online through Home Depot that DreamLine alleges infringe its intellectual property rights. Aston's "French Durance" is a single, black-framed door with 15 glass panes—three columns and five rows—and no handle. Pl.'s Ex. 59. Aston's "French Mayenne" is a single, black-framed door with 15 glass panes—three columns and five rows—with a pull handle positioned on the left-hand side of the door. *Id.* at 103. There is more than one model of Aston's "French Vienne." One model is a black-framed shower enclosure. *Id.* at 80. Its narrower panel has 15 glass panes—three columns and five rows. *Id.* Its wider panel, which meets the narrower panel at a right angle, has 25 glass panes—five columns and five rows. *Id.* The wider panel has a pull handle positioned near where the two panels meet. *Id.* The other French Vienne model is identical to the enclosure model, but it is a standalone door rather than an enclosure—its only piece is the wider, handled door. *Id.* at 85, 90. Finally, the Aston "French Brienne" is black-framed double doors with 15 panes on each door—each with three columns and five rows. *Id.* at 75. It has a pull handle on the right-hand door positioned near where the doors meet. *Id.*

---

[1] Dreamline does not provide product pictures of the French Linea Avignon, French Linea Rhone, or French Corner.



Figure 3: Aston's Products

Pl.'s Ex. 75, 80, 85, 97, 103.

DreamLine alleges Aston's shower doors, all including "French" in their names and all named after a town or a river in France, infringe the FRENCH marks generally and DreamLine's registered trademarks. Am. Compl. 11, 18 ¶¶ 47-48, 91-92. DreamLine further alleges Aston's French Durance infringes D814 (*id.*) and Aston's French Brienne infringes D818 (*id.* at 7-8, ¶¶ 34-35). Accordingly, DreamLine brings claims against Aston for federal design patent infringement of D818 and D814, false designation of origin under the Lanham Act, federal trademark infringement, common law trademark infringement, and unfair competition. Am Compl. 14-20, ¶¶ 58-108. DreamLine further seeks a preliminary

5

injunction preventing the sale of Aston's French Durance, French Mayenne, French Vienne, French Brienne, and any other designs "likely to infringe" D818 or D814 and the use of any marks "confusingly similar to" DreamLine's FRENCH marks. Mot. 5. *See also* Am. Compl. 20-22, ¶¶ 109-18 (applying for preliminary injunction).

After DreamLine filed its original complaint, Aston removed the word "French" from its product names on Home Depot's website. Resp. 5-6 (ECF No. 23). For example, "French Vienne" is now simply called "Vienne." *Id.* at 6. But the website's product specifications still describe Aston's shower doors as being of "French industrial design." *Id.* Moreover, in response to the lawsuit, Aston raised several affirmative defenses including that D818 and D814 are invalid, the use of the word "French" in connection with the sale of goods is fair use, and DreamLine's alleged trademarks are unprotectable. Answer 10, ¶¶ 1-7 (ECF No. 19). Aston also counterclaimed for a declaratory judgment of noninfringement of D818, D814 and the asserted trademarks, and for a declaration of invalidity of D818, D814, and of the French Corner mark. *Id.* at 13-19, ¶¶ 20-59. Before Aston answered the suit, however, DreamLine filed the pending motion for a preliminary injunction. It has since been fully briefed and is ripe for determination.[2]

---

[2] Shortly after the motion was fully briefed, the parties advised the Court of their desire to conduct early mediation. Jt. Proposal (ECF No. 31). Accordingly, the Court ordered the parties to complete mediation no later than July 29, 2019, and to file a Mediation Report describing the status of settlement negotiations no later than August 5, 2019. Order (ECF No. 32). In view of that Order, the magistrate judge stayed consideration of the Motion and all related deadlines until the parties

**Preliminary Matters**

DreamLine requests expedited discovery to develop the record in advance of an evidentiary hearing. Mot. at 17. It is within a court's discretion whether to hold an evidentiary hearing on a preliminary injunction. *See Heil Trailer Int'l Co. v. Kula*, 542 F. App'x 329, 334 n.17 (5th Cir. 2013) (per curiam) ("Several of our decisions have left open the possibility that the decision to deny a preliminary injunction without an evidentiary hearing (as opposed to granting it) might be entirely within the district court's discretion—even where a genuine factual dispute remains between the parties."); *Fed. Sav. & Loan Ins. v. Dixon*, 835 F.2d 554, 558-59 (5th Cir. 1987) (holding that granting a preliminary injunction without an evidentiary hearing was within district court's discretion); *Nexstar Broad., Inc. v. Time Warner Cable, Inc.*, 2012 WL 12872719, at *1 (N.D. Tex. Sept. 5, 2012) ("If no factual disputes exist in regard to the preliminary injunction, an oral hearing is not required."). DreamLine fails to identify any specific discovery it would request in preparation for an evidentiary hearing. And, in the absence of any indication as to what discovery is necessary and why, an evidentiary hearing on DreamLine's Motion for a Preliminary Injunction is not warranted. Additionally, the parties have apparently commenced discovery pursuant to the Federal Rules of Civil Procedure. Aston has filed a motion to compel which the magistrate judge has set

---

submitted their Mediation Report as required by the Court's Order. The parties mediated as required, but failed to reach a settlement. ADR Summary (ECF No. 35); Jt. Status Report (ECF No. 36).

for a hearing on December 2o, 2019. DreamLine can similarly avail itself of the normal avenues for obtaining discovery.

## Legal Standards

A preliminary injunction is an "extraordinary remedy" which should be granted only if the movant has clearly carried its burden of persuasion. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (stating a preliminary injunction is a "drastic remedy" that "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.") (emphasis in the original). In deciding whether to issue a preliminary injunction, a district court considers the following: (1) likelihood of success on the merits; (2) substantial threat of irreparable harm if the injunction is not granted; (3) the balance of hardships between the parties; and (4) the public interest in granting the preliminary injunction. *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 288 (5th Cir. 2012); *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1298 (Fed. Cir. 2009). With respect to patent infringement claims, the court weighs each of these as factors. *See id.* But a preliminary injunction must be denied if the movant fails to establish the first two factors. *Mannatech, Inc. v. Wellness Quest, LLC*, 2014 WL 11515729, at *1 (N.D. Tex. Nov. 4, 2014) (Kinkeade, J.) (citing *Altana Pharma AG v. Teva Pharms. USA, Inc.*, 566 F.3d 999, 1005 (Fed. Cir. 2009)). In fact, a court need not make findings concerning the third and fourth factors if the movant fails to establish either of the first two factors. *Wireless Agents, L.L.C. v. T-Mobile, USA, Inc.*, 2006 WL 1540587, at *2 (N.D. Tex. June 6, 2006) (citing *Polymer Techs., Inc.*

*v. Bridwell*, 103 F.3d 970, 973-74 (Fed. Cir. 1996)). With respect to trademark infringement claims, however, these considerations are not factors, but requirements—the movant must establish all four to obtain a preliminary injunction. *TGI Friday's Inc. v. Great N.W. Rests., Inc.*, 652 F. Supp. 2d 763, 767 (N.D. Tex. 2009).

## Analysis

DreamLine is not entitled to a preliminary injunction because it has not clearly shown a substantial threat of irreparable harm if the injunction is not granted.

### I. Patent Claims

DreamLine asserts that, in a design patent infringement case, the patentee may show irreparable harm through price erosion, consumer confusion, reputational harm, and loss of goodwill based on customer calls, emails, and online reviews. Mot. 14 (citing *Tinnus Enterprises, LLC v. Telebrands Corp.*, 846 F.3d 1190, 1200 (Fed. Cir. 2017)). But here, DreamLine fails to identify any specific instances of price erosion, consumer confusion, reputational harm, or loss of goodwill. In a declaration filed in support of the Motion, DreamLine's co-founder and former Chief Product Officer Val Shtraks generally states that "DreamLine . . . believes that Aston's conduct has capitalized on the hard earned goodwill DreamLine has developed for the French Products[,] and Aston's conduct is diluting and diminishing DreamLine[']s goodwill associated with the French Products." Pl.'s App., Ex. A at 3, ¶ 15 (ECF No. 41-1). Shtraks further states that

9

"Aston's conduct is creating confusion, false association, and misunderstanding among purchasers between DreamLine products and Aston products." *Id.* at 4, ¶ 18. But Shtraks does not offer any evidence of actual confusion, and these generic, self-serving statements fail to satisfy DreamLine's burden to clearly establish irreparable harm.

Shtraks asks the Court to assume confusion exists because Home Depot's website features DreamLine's FRENCH products alongside Aston's accused products. *Id.* However, screenshots of the website show that Home Depot clearly identifies Aston's products as Aston's and DreamLine's products as DreamLine's. Pl.'s Ex. 75, 80, 85, 90, 97, 103. This evidence does not establish that prospective purchasers are likely to mistakenly believe Aston and DreamLine are associated. *Aquifer Guardians in Urban Areas v. Fed. Highway Admin.*, 779 F.Supp.2d 542, 574 (W.D. Tex.2011) (explaining that to establish irreparable injury, the movant must demonstrate that the harm is "real, imminent, and significant—not merely speculative or potential—with admissible evidence"). DreamLine also relies on evidence submitted with its reply that customers who purchased Aston's products were dissatisfied with their purchases. But offering new evidence in a reply brief is improper, and the Court will not consider DreamLine's new evidence in support of the Motion.

DreamLine has failed to clearly carry its burden of persuasion to warrant a preliminary injunction on its design patent claims.

10

## II. Trademark Claims

All DreamLine's remaining claims are trademark claims.³ With respect to its trademark claims, DreamLine urges the Court to find irreparable harm based on a likelihood of confusion, which causes DreamLine to lose control over its goodwill. Mot.14-16; Reply 5. A likelihood of confusion means "more than a mere possibility of confusion." *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 311 (5th Cir. 2008). And here, DreamLine has not satisfied its burden to clearly show a likelihood of confusion.

To determine whether a use can result in consumer confusion, a court considers several factors. These factors are the same for both federal and common law trademark infringement claims. *Elvis Presley Enters., Inc. v. Capece,* 141 F.3d 188, 193 (5th Cir. 1998). The factors include (1) the type of trademark allegedly infringed; (2) the similarity between the two marks; (3) the similarity of the products or services; (4) the identity of the retail outlets and purchasers; (5) the identity of the advertising media used; (6) the defendant's intent; and (7) any evidence of actual confusion. *Dall. Cowboys Football Club, Ltd. v. Am.'s Team Props., Inc.*, 616 F. Supp. 2d 622, 636-37 (N.D. Tex. 2009) (Kinkeade, J.) (citing

---

³ DreamLine asserts federal trademark infringement of its registered trademarks, common law trademark infringement under Texas law, and unfair competition by false designation of origin. A false designation of origin claim under 15 U.S.C. § 1125(a)(1)(A) is the vehicle to assert infringement of an unregistered trademark. *See B&B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1301 (2015) (discussing that the Lanham Act creates federal cause of action for trademark infringement and citing § 1125(a)(1)(A) as standard for assessing whether unregistered mark has been infringed).

*Elvis Presley Enters.*, 141 F.3d at 194). These factors "do not apply mechanically to every case and can serve only as guides, not as an exact calculus." *Scott Fetzer Co. v. House of Vacuums Inc.,* 381 F.3d 477, 485 (5th Cir. 2004). A court should consider each factor in light of the circumstances of the case, and "different factors will weigh more heavily from case to case depending on the particular facts and circumstances involved." *Marathon Mfg. Co. v. Enerlite Prods. Corp.,* 767 F.2d 214, 218 (5th Cir. 1985). The Court concludes the following factors weigh against likelihood of confusion.

### A. Actual Confusion

The best evidence of likelihood of confusion is actual confusion. *Dall. Cowboys*, 616 F. Supp. 2d at 640. To show actual confusion, a plaintiff may rely on anecdotal instances of consumer confusion or consumer surveys. *Scott Fetzer Co.*, 381 F.3d at 486. Although DreamLine generally alleges Aston's sales of the French Brienne, French Vienne, French Durance, and French Mayenne are likely to cause confusion in the marketplace (Am. Compl. 16, ¶¶ 77-78; Mot. 8), it does not allege any specific instances of consumer confusion. Nor does it submit any evidence—anecdotal or otherwise—that any consumers have been confused between the two companies' products. In its brief, DreamLine urges that it would demonstrate "ongoing" confusion at an evidentiary hearing (Mot. 14) without any hint of how it could substantiate this assertion. But, as discussed above, an evidentiary hearing is not warranted because DreamLine has not indicated what sort of discovery is necessary and how that discovery would help it prove customer confusion.

B. Type of Mark
---

The type of mark refers to its classification as generic, descriptive, suggestive, or fanciful/arbitrary. *Dall. Cowboys*, 616 F. Supp. 2d at 637. The stronger the mark under these classifications (the more fanciful or arbitrary), the greater protection it is afforded. *Elvis Presley Enters.*, 141 F.3d at 201. In this case, DreamLine's asserted FRENCH Marks are descriptive and are thus entitled to very little protection. A mark is descriptive if it identifies a characteristic or quality of an item, "such as its color, odor, function, dimensions, or ingredients." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 241 (5th Cir. 2010) (citation omitted). In other words, if the mark conveys information about the product, it is descriptive. *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 539 (5th Cir. 2015). Moreover, one test for descriptiveness is "whether competitors would be likely to need the terms used in the trademark in describing their products." *Id.* (citations omitted).

"French" is a style of door, and the products in the French line are shower doors that emulate that style. A French door is "a door, usually one of a pair, of light construction with glass panes extending for most of its length." *French door*, American Heritage Dictionary (5th ed. 2011). As described and depicted above, the FRENCH line comprises shower doors all with rectangular glass panes the entire length and width of the doors. The FRENCH marks thus convey information about the products in the FRENCH line—that the products are French-style shower doors. A consumer does not have to use imagination to draw a conclusion about

13

the nature of the door. If a given consumer knows what a traditional French door looks like, the FRENCH marks are a "give-away" as to the style of the product. And, in that vein, the word "French" is useful in describing Aston's products, as Aston's products are French-style shower doors. The French marks are therefore descriptive.

Because the French marks are descriptive, they are only entitled to protection if they have acquired secondary meaning. DreamLine has not established that they have. Indeed, DreamLine offers no evidence that would support a finding of secondary meaning. DreamLine simply cites nonbinding authority for the proposition that, because it has obtained registration of some of the FRENCH marks, there is a rebuttable presumption that they are inherently distinctive. Mot. 9. DreamLine's bald assertion of distinction does not weigh in favor of a likelihood of confusion.

### C. Similarity Between the Marks

The degree of similarity between the marks is determined by comparing their appearance, sound, and meaning. *Dall. Cowboys*, 616 F. Supp. 2d at 638 (citing *Elvis Presley Enters.*, 141 F.3d at 201). "The relevant inquiry is whether, under the circumstances of the use, the marks are sufficiently similar that prospective purchasers are likely to believe that the two users are somehow associated." *Elvis Presley Enters.*, 141 F.3d at 201 (quotation marks and citation omitted). It is the overall impression that counts; a court should not simply

compare the individual features of the marks. *Dall. Cowboys*, 616 F. Supp. 2d at 638; *Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496, 502 (5th Cir. 1979).

DreamLine contends that the marks are "effectively identical" because the "distinctive component of both parties' marks is the prominent term 'French' and the accompanying French names." Mot. 10. They are not. Home Depot's website clearly identifies Aston's products as Aston's and DreamLine's products as DreamLine's. Pl.'s Ex. 75, 80, 85, 90, 97, 103. While Aston names its products after French towns and rivers like DreamLine does (Am. Compl. 11, ¶ 48), it does not name its products after the *same* French towns or rivers that DreamLine does (*see id.* at 6, 11, ¶¶ 25, 48). Moreover, Aston has deleted the word "French" from the names of all its allegedly infringing products, thus eliminating one of the "distinctive components" that, according to DreamLine, render the marks "effectively identical." Resp. 5-6. The marks are not similar.

### D. Defendant's Intent

If a plaintiff can show a defendant adopted a mark intending to derive benefit from the plaintiff's reputation, such a fact weighs in favor of likelihood of confusion. *Exxon Corp. v. Tex. Motor Exch. of Hous., Inc.*, 628 F.2d 500, 506 (5th Cir. 1980). DreamLine's argument that Aston has intentionally infringed its FRENCH marks rests on the idea that Aston knew of DreamLine and its products before it began selling the allegedly infringing products. Mot. 13. But DreamLine submits no evidence that establishes Aston sells the allegedly infringing products with the intent to trade on DreamLine's goodwill. Knowledge that another

company exists does not establish intentional infringement of that company's intellectual property. This factor, therefore, weighs against likelihood of confusion. *See Get Me, LLC v. Abello*, 2017 WL 10121544, at *5 (N.D. Tex. Sept. 20, 2017) (finding intent factor weighed against likelihood of confusion where no evidence in record established alleged infringer intended to derive benefit from other party's reputation).

To the extent the remaining factors—the similarity between the products, the identity of the retail outlets and purchasers, and the identity of the advertising media used—weigh in favor of likelihood of confusion, their weight is not sufficient to carry DreamLine's burden to show it is entitled to a preliminary injunction.

## Recommendation

For the foregoing reasons, DreamLine's Motion for Preliminary Injunction and Expedited Discovery (ECF No. 13) should be DENIED.

**SIGNED** December 3, 2019.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk is directed to serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, § 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 14 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation will bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the findings, conclusions, and recommendation within 14 days after being served with a copy will bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).